UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00188-TBR

GGNSC LOUISVILLE ST. MATTHEWS, LLC                    PETITIONERS
d/b/a GOLDEN LIVINGCENTER – ST. MATTHEWS, *et al.*

v.

WALLACE BADGETT, ADMINISTRATOR OF THE ESTATE
OF JOSEPH BADGETT, DECEASED                          RESPONDENT

## Memorandum Opinion

For a time, Joseph Badgett resided in Golden LivingCenter (GLC) Mt. Holly, a nursing home in Louisville, Kentucky owned by Golden Gate National Senior Care, LLC (GGNSC) and its related entities.   Upon his admission, Badgett agreed to arbitrate all his claims against GLC Mt. Holly.   During the next two years, Badgett was admitted to several other nursing homes and hospitals. He eventually landed at GLC St. Matthews, another Louisville nursing home owned by GGNSC.   This time, Badgett declined to enter into an arbitration agreement identical to the one he signed at GLC Mt. Holly.

Sadly, Badgett died while a resident at GLC St. Matthews.   His estate brought a negligence and wrongful death action in state court.   The sole issue is whether Petitioners can compel that action to arbitration based upon the GLC Mt. Holly agreement.   The Court holds they cannot.

## I. Facts and Procedural History

The facts of this case are straightforward and undisputed.   Joseph Badgett was admitted to GLC Mt. Holly, a GGNSC facility, in June 2013.   [DN 1 at 5.]   As

part of his admissions paperwork, he signed a document called an "Alternative Dispute Resolution Agreement."   [DN 1-2 at 2.]   Executing the agreement was not a condition of Badgett's admission to the GLC Mt. Holly facility.   [*Id.*]

The Mt. Holly agreement states that it "is entered into by GLC – Mt. Holly, ('Facility'), and Joseph Badgett."   [*Id.*]   It defines "facility" as, in pertinent part, "the living center, its employees, agents, officers, directors, affiliates and any parent or subsidiary of Facility."   [*Id.*]   The agreement further states that "[i]t is the intent of the Parties that this Agreement shall inure to the benefit of, bind, and survive them, their successors, and assigns."   [*Id.*]   Lastly, the agreement says it "shall remain in effect for all care and services rendered to the Resident at or by the Facility regardless of whether the Resident is subsequently discharged and readmitted to the Facility without renewing, ratifying, or acknowledging this Agreement."   [*Id.* at 4.]

By its terms, the Mt. Holly agreement requires any "Covered Disputes" between the parties to be resolved by mediation or arbitration.   [*Id.*]   "Covered Disputes" are "any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility or the Admissions Agreement between the Parties."   [*Id.* at 3.]   The agreement then goes on to set out the rules and procedures for dispute resolution.   *See* [*id.* at 3-4.]   Badgett and a GLC Mt. Holly representative signed on the last page.   [*Id.* at 6.]

It is unclear how long Badgett resided at GLC Mt. Holly.   However, by January 2015, he was in Jewish Hospital.   *See* [DN 12-6 at 1.]   Over the next few

months, Badgett cycled between his home, the hospital, and a non-GGNSC nursing home.   *See* [DN 12-1 at 6.]   In September, he was admitted to GLC St. Matthews, where he stayed until his death on February 16, 2016.   [*Id.* at 1.]

Badgett executed two documents upon his admission to GLC St. Matthews. The first was another "Alternative Dispute Resolution Agreement."   [DN 12-5 at 1.] The St. Matthews agreement is identical to the Mt. Holly agreement, except that "GLC, St. Matthews" is substituted as the "Facility."   [*Id.*]   However, on the last page, Badgett signed below the line stating, "The Alternative Dispute Resolution Agreement above set forth is hereby DECLINED."   [*Id.* at 4.]

The second document was Badgett's admissions agreement to GLC St. Matthews.   *See* [DN 12-4.]   The majority of the admissions agreement details the terms of Badgett's stay, including consent to treatment, financial arrangements, and the like.   However, the language relevant to this case appears on the agreement's fifth page:

### XI. Entire Agreement

This Agreement and the Notices given to you upon admission constitute the entire Agreement between you and us for the purposes of your admission to our LivingCenter. There are no other agreements, understandings, restrictions, warranties or representations between you and us as a condition of your admission to our LivingCenter.  This Agreement supersedes any prior admission contracts regarding your admission to our LivingCenter.  However, if you execute, or have executed, an Alternative Dispute Resolution Agreement with us in connection with any admission to our LivingCenters, then that Agreement shall be, and remain, binding upon you, and upon us, in accordance with the terms that are set forth in that Agreement.

[*Id.* at 5.]

Following Badgett's death, his estate brought suit in Jefferson County, Kentucky state court against several GGNSC-related entities, two nursing home administrators, and three John Doe defendants.[1]  *See* [DN 1-1 at 2.]  The estate alleges those defendants, through their negligence, caused Joseph to "suffer[] accelerated deterioration of his health and physical condition beyond that caused by the normal aging process," ultimately resulting in his death.   [*Id.* at 11.]

Petitioners then filed the instant action in this Court, seeking to compel arbitration of the state court action, to stay that action pending arbitration proceedings, and to enjoin the estate from further pursing its claims in state court. [DN 1 at 1-2; DN 4.]   As grounds for their petition, they rely upon the GLC Mt. Holly arbitration agreement Badgett signed upon his admission to that facility in June 2013.   In response to Petitioners' motion to compel arbitration, the estate moved to dismiss this action, arguing the Mt. Holly agreement does not require the estate to arbitrate claims arising from Badgett's stay at GLC St. Matthews.   [DN 12.]   Both motions are fully briefed and ripe for adjudication.

## II. Standard of Review

This matter is before the Court upon competing motions.   Petitioners move to compel arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, and Badgett's estate moves to dismiss pursuant to Federal Rule of Civil

---

[1] Defendants in the state court action are: GGNSC Louisville St. Matthews LLC, d/b/a Golden LivingCenter – St. Matthews; GGNSC Administrative Services, LLC; GGNSC Holdings, LLC; GGNSC Equity Holdings, LLC; GGNSC Equity Holdings II, LLC; GGNSC Clinical Services, LLC; Golden Gate National Senior Care, LLC; Golden Gate Ancillary, LLC; GPH Louisville St. Matthews, LLC; Lisa S. Davis, in her capacity as Administrator; Joshua Schindler, in his capacity as Administrator; and John Does 1 through 3.   [DN 1-1 at 3.]   The corporate entities are all parties to this suit, but the administrators and John Doe defendants are not.

Procedure 12(b)(6). The Court may grant a Rule 12(b)(6) motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x 369, 371 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009)). In turn, Petitioners are entitled to compel arbitration under the FAA if "a valid agreement to arbitrate exists between the parties" and "the specific dispute falls within the substantive scope of the agreement." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). The estate does not argue that its claims fall outside the scope of the Mt. Holly arbitration agreement. At this stage, then, the estate will only prevail if, drawing all reasonable inferences in Petitioners' favor, the agreement is unenforceable. Keeping in mind the "national policy favoring arbitration," *Preston v. Ferrer*, 552 U.S. 346, 349 (2008), that puts arbitration agreements "upon the same footing as other contracts," *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citation omitted), the Court will turn to the contractual provisions at issue here.

### III. Discussion

This case presents an issue of apparent first impression in this circuit.[2] When a patient signs an arbitration agreement at one nursing home, but later disclaims an identical agreement at a facility owned by the same parent company,

---

[2] Badgett's estate raises other arguments other than those addressed by the Court herein. However, those arguments have been routinely and firmly rejected by this Court and its sister court on a multitude of prior occasions. *See GGNSC Louisville Mt. Holly, LLC v. Turner*, No. 3:16-CV-00149-TBR, 2017 WL 537200, at *3 (W.D. Ky. Feb. 9, 2017) (listing cases). As those issues are not decisive in this case, the Court will not address them again today.

may the first agreement be enforced?   The Court must answer this question using Kentucky contract law.   *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)); *Fazio v. Lehman Bros.*, 340 F.3d 386, 392-93 (6th Cir. 2003) (citations omitted).

Typically, the first step in cases involving contract interpretation is determining whether the contested provisions are ambiguous, because "[i]n the absence of ambiguity, a written instrument will be enforced strictly according to its terms."   *Ky. Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016) (citations omitted).   "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations."   *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010) (citation omitted).   Only when a contract is ambiguous may courts look beyond the four corners of the document to discern the parties' intent.   *See Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 92 S.W.3d 381, 385 (Ky. Ct. App. 2002).

However, in this case there is an even more basic question: which contract governs?   Although the estate's claims in state court arise from Badgett's stay at GLC St. Matthews, Petitioners rely primarily upon the GLC Mt. Holly arbitration agreement.   That contract defines "Facility" as, among other things, the "affiliates" of Golden LivingCenter – Mt. Holly.   [DN 1-2 at 2.]   Further, the Mt. Holly agreement states that it "shall remain in effect for all care and services rendered to the Resident at or by the Facility regardless of whether the Resident is

subsequently discharged and readmitted to the Facility." [*Id.* at 4.]   Petitioners argue these clauses, taken together, extend the Mt. Holly agreement to encompass the harm Badgett allegedly suffered at GLC St. Matthews.

The estate does not contest Petitioners' assertion that GLC St. Matthews and GLC Mt. Holly, owned by the same parent companies, are "affiliates."   Nor does it seem to argue that the GLC Mt. Holly agreement is ambiguous on its face.   Rather, the estate says the GLC St. Matthews admissions and arbitration agreements govern.   And because those documents are ambiguous when read together, the estate argues, the Court should look to the intent of the parties.

The estate makes a strong argument that the provisions included in Badgett's St. Matthews paperwork are ambiguous.   In pertinent part, Section XI of Badgett's admissions agreement states, "[I]f you execute, or have executed, an Alternative Dispute Resolution Agreement with us in connection with any admission to our LivingCenters, then that Agreement shall be, and remain, binding upon you, and upon us, in accordance with the terms that are set forth in that Agreement."   [DN 12-4 at 5.]   Put another way, if a resident ever enters a GGNSC facility and agrees to arbitration, that election is forever binding, even if the resident is later admitted to a different GGNSC facility.

However, the St. Matthews arbitration agreement, also completed by Badgett upon his admission to the facility, suggests something different.   The agreement contains two signature lines: one for the resident to accept the agreement, and one to decline.   [DN 12-5 at 4.]   And by its terms, the agreement is voluntary –

Badgett did not have to agree to arbitration to be admitted to GLC St. Matthews. [*Id.* at 1.]  When read together, then, Badgett's St. Matthews papwerwork is plainly inconsistent.   The admissions agreement says, in effect, "If you have agreed to arbitrate in the past, you must also arbitrate in the future."   But the arbitration agreement says, "That notwithstanding, you can choose to arbitrate or not."

The Court need not decide whether this conflict amounts to an ambiguity, though, because there is a simpler route.   Even if the GLC Mt. Holly arbitration agreement was effective to bind Badgett to arbitrate in perpetuity, the GLC St. Matthews arbitration agreement constitutes a novation of the prior contract.   "A novation is the entering into a new contract which takes the place of the original one and in which it is merged and extinguished."   *White/Reach Brannon RD., LLC v. Rite Aid of Ky., Inc.*, 488 S.W.3d 631, 636 (Ky. Ct. App. 2016).   There are two types of novation, express and implied.   An express novation, as the title suggests, occurs when "the new contract in express terms rescinds the old one."   *Id.*   An implied novation, on the other hand, occurs "as a necessary implication, and takes place by operation of law, without any express agreement to that effect, whenever the new contract is manifestly in place of or inconsistent with a former one, or which renders a former contract impossible of performance."   *Id.* at 636-37 (citing *Combs v. Morgan*, 307 Ky. 711, 717, 211 S.W.2d 821, 825 (1948)).   When a novation happens, it "relieves parties of the obligations under the contract and results in a

8

new agreement." *Id.* at 637 (citing *Wells Fargo Fin. Ky., Inc. v. Thomer*, 315 S.W.3d 335, 339 (Ky. Ct. App. 2010)).[3]

The elements of a novation "are essentially the same as in the first contract[:] . . . (1) parties; (2) a meeting of the minds; and (3) a consideration." *Daviess Cty. Bank & Trust Co. v. Wright*, 129 Ky. 21, 110 S.W. 361, 363 (1908). The touchstone of a novation is "the intention of the parties. This intent is the controlling element in determining the question, and unless the transaction was intended to extinguish the old obligation by substituting the new one therefor, a novation is not effected." *Clark v. Thompson*, 309 Ky. 850, 861, 219 S.W.2d 22, 28 (1948) (quoting *Nw. Mut. Life Ins. Co. v. Eddleman*, 247 Ky. 116, 56 S.W.2d 561, 562 (1932)).

Here, the intent of one party could hardly be clearer. When Joseph Badgett entered GLC Mt. Holly in 2013, he agreed to arbitrate his claims against that facility. And when offered that very same choice upon his admission to GLC St. Matthews in 2015, he chose not to arbitrate. Badgett's decision to reject an identical agreement manifests his intent to have his claims against GLC St. Matthews decided by a jury.

Although divining Petitioners' intent is a slightly more difficult task, the Court is satisfied they intended to offer Badgett the same choice he faced upon entering GLC Mt. Holly: either arbitrate or don't. Aside from the name of the

---

[3] Most often, novation is implicated in the context of a mortgage, when a debtor argues her subsequent agreement with the lender "operates to extinguish an original debt." *See Forcht v. Forcht Bank, N.A.*, ___ S.W.3d ___, 2017 WL 2705405, at *5 (Ky. Ct. App. Jun. 23, 2017). Still, novation is by no means limited to the cancellation of debt, as evidenced by the variety of Kentucky cases on the subject. *See, e.g., Schulte v. Schulte*, No. 2003-CA-000987-MR, at *3 (Ky. Ct. App. Jun. 11, 2004) (discussing novation of a former husband's promise to pay maintenance by subsequent property settlement agreement); *Dempsey v. Marshall*, 344 S.W.3d 606 (Ky. Ct. App. 1961) (lease agreement); *Combs v. Morgan*, 307 Ky. 711, 717, 211 S.W.2d 821, 825 (1948) (land sale).

facility, the Mt. Holly and St. Matthews arbitration agreements are identical. Both agreements were presented to Badgett upon or shortly after his admission to the nursing home, and both purported to allow Badgett a choice regarding how any future claims against the facility would be decided.

Petitioners argue that Badgett's St. Matthews admissions agreement undercuts any argument that the facility intended to offer him a new choice when it came to arbitration. As noted above, Petitioners construe Section XI of the admissions agreement to forever bind a person to his or her prior election regarding arbitration at any GGNSC-owned nursing home.[4]   But if that were indeed the case, then there was no reason for Petitioners to present Badgett with another arbitration agreement. In other words, under their construction, Petitioners offered Badgett nothing more than the *appearance* of choice. However, adopting such a construction would cause this Court to run afoul of its mandate "to give effect to every provision and word whenever possible." *Invensys, Inc. v. Henry Vogt Mach. Co.*, No. 2007-CA-000606-MR, 2009 WL 2696828, at *5 (Ky. Ct. App. Jul. 11, 2008); *see also Talmer Bank & Trust Co. v. Minton Firm, P.C.*, 660 F. App'x 439, 445 (6th Cir. 2016) (citations omitted). Petitioners offer no other reading that would render the GLC St. Matthews arbitration agreement more than a mere nullity, and at the same time allow them to fall back on the Mt. Holly agreement. By affording Badgett the opportunity to accept or reject an arbitration agreement identical to his previous one, Petitioners signaled their "inten[t] to extinguish the

---

[4] Because the GLC St. Matthews arbitration agreement declined by Badgett constitutes a novation, the Court need not decide today whether the clauses contained in the admissions agreement and the GLC Mt. Holly agreement, purporting to bind Badgett to arbitration in perpetuity, are valid.

old obligation by substituting the new one," thereby accomplishing a novation. *Clark*, 219 S.W.2d at 28.

In the end, Petitioners fail to adequately explain why two identical documents, presented under identical circumstances and ostensibly designed to accomplish an identical objective, should nevertheless be treated differently. As to the estate's claims against Petitioners arising from Badgett's stay at GLC St. Matthews, the new arbitration agreement "is manifestly in place of [and] inconsistent with [the] former one." *White/Reach Brannon RD.*, 488 S.W.3d at 636. As a novation, it therefore "relieves [the] parties of the obligations under the" GLC Mt. Holly agreement. *Id.* at 637 (citation omitted). The estate has no obligation, contractual or otherwise, to arbitrate its claims against Petitioners. Because no "valid agreement to arbitrate exists between the parties," *Masco Corp.*, 382 F.3d at 627 (citation omitted), this Court may not grant Petitioners the relief they seek under the Federal Arbitration Act. Petitioners' motion to compel arbitration [DN 4] will be DENIED, and the estate's motion to dismiss [DN 12] will be GRANTED.

An appropriate order will follow.

CC: Counsel of Record